UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHELLE MAZZOLA, individually and as mother of BABY DOE; GUY MAZZOLA, individually and as father of BABY DOE; AMEC, LLC; and LISA KULLER, on behalf of themselves and all others similarly situated, <br><br>     Plaintiffs, <br><br> v. <br><br> ANTHEM HEALTH PLANS, INC., CARELON BEHAVIORAL HEALTH, INC., and ELEVANCE HEALTH, INC., <br><br>     Defendants. | Civil Action No. 3:25-cv-01433-OAW |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS COMPLAINT**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

FACTUAL ALLEGATIONS ........................................................................................ 6

LEGAL STANDARD.................................................................................................... 8

ARGUMENT ................................................................................................................. 9

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER ELEVANCE .................. 9

II.     PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED.............................. 12

        A.      All State Law Claims Asserted by the Mazzolas and Amec Are Preempted
                by ERISA ................................................................................................ 12

        B.      Plaintiffs' State Law Claims Must Be Dismissed for Failure to State a Claim
                .................................................................................................................. 14

III.    PLAINTIFFS' CLAIMS UNDER ERISA MUST BE DISMISSED FOR
        FAILURE TO STATE A CLAIM. .............................................................................. 29

        A.      Plaintiffs Cannot Maintain ERISA Claims Against Carelon and Elevance ......... 29

        B.      Plaintiffs' Claim for Benefits Under ERISA Fails ............................................... 30

        C.      Plaintiffs' Claim for Breach of Fiduciary Duty Under ERISA Must be
                Dismissed ................................................................................................ 34

        D.      Plaintiffs' Claim for False Statements & Representations under ERISA
                Must be Dismissed ................................................................................... 36

        E.      Plaintiffs' Claim for Violation of MHPAEA Must be Dismissed. ...................... 37

CONCLUSION............................................................................................................. 40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004).................................................................................................12, 13

*Aetna Life Ins. Co. v. Borges*,
    869 F.2d 142 (2d Cir. 1989)..........................................................................................14

*Apace Commc'ns, Ltd. v. Burke*,
    522 F. Supp. 2d 509 (W.D.N.Y. 2007) ........................................................................25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................8, 36

*Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*,
    No. 3:08-CV-1958(CFD), 2010 WL 1882316 (D. Conn. May 10, 2010) .....................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................................8

*Buckley Dement, Inc. v. Travelers Plan Adm'rs of Illinois, Inc.*,
    39 F.3d 784 (7th Cir. 1994) .....................................................................................35, 36

*Caires v. JP Morgan Chase Bank, N.A.*,
    880 F. Supp. 2d 288 (D. Conn. 2012).........................................................................19

*Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Intern., Inc.*,
    2 F.3d 24 (2d Cir. 1993)................................................................................................30

*Cooper v. Int'l Bus. Machines Corp.*,
    No. 3:24-CV-656 (VAB), 2024 WL 5010488 (D. Conn. Dec. 6, 2024) .................31, 32

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987).........................................................................................9

*Drena v. Bank of Am., N.A.*,
    No. 3:15-CV-176 (VAB), 2017 WL 6614094 (D. Conn. Dec. 27, 2017) .....................25

*Feifer v. Prudential Ins. Co. of Am.*,
    306 F.3d 1202 (2d Cir. 2002)........................................................................................33

*Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*,
    No. 10-CV-04911-EJD, 2011 WL 2748724 (N.D. Cal. July 13, 2011) .......................33

*Gallagher v. Empire HealthChoice Assurance, Inc.,*
    339 F. Supp. 3d 248 (S.D.N.Y. 2018)............................................................................38, 39

*Garwood & Sons Const. Co. v. Centos Assocs. Ltd. P'ship,*
    8 Conn. App. 185 (1986) ..............................................................................................27, 28

*Geysen v. Securitas Sec. Servs. USA, Inc.,*
    322 Conn. 385 (2016) ...........................................................................................................18

*Gucci Am., Inc. v. Weixing Li,*
    768 F.3d 122 (2d Cir. 2014)..................................................................................................10

*Hall v. United Techs., Corp.,*
    872 F. Supp. 1094 (D. Conn. 1995).................................................................................35, 36

*Hanson v. Denckla,*
    357 U.S. 235 (1958)...............................................................................................................10

*Heimeshoff v. Hartford Life & Acc. Ins. Co.,*
    571 U.S. 99 (2013).................................................................................................................31

*Henderson v. Wells Fargo Bank, N.A.,*
    No. 3:13CV378 (JBA), 2017 WL 731780 (D. Conn. Feb. 21, 2017)......................................15

*Hoskins v. Titan Value Equities Grp., Inc.,*
    252 Conn. 789 (2000) ...........................................................................................................18

*Hunte v. Abbott Lab'ys, Inc.,*
    556 F. Supp. 3d 70 (D. Conn. 2021).....................................................................................26

*Ingersoll-Rand Co. v. McClendon,*
    498 U.S. 133 (1990)...............................................................................................................13

*K.K. v. Premera Blue Cross,*
    No. C21-1611-JCC, 2023 WL 3948236 (W.D. Wash. June 12, 2023) ......................23, 38, 39

*Kennedy v. Empire Blue Cross & Blue Shield,*
    989 F.2d 588 (2d Cir. 1993)..................................................................................................31

*Estate of Kenyon v. L+M Healthcare Health Reimbursement Acct.,*
    404 F. Supp. 3d 627 (D. Conn. 2019)...................................................................................29

*Kowalski v. Tesmer,*
    543 U.S. 125 (2004)...............................................................................................................17

*Landry v. Spitz,*
    102 Conn. App. 34 (2007) .................................................................................................17, 18

*Leonard v. Gen. Motors L.L.C.*,
    504 F. Supp. 3d 73 (D. Conn. 2020)......................................................................11

*Liberty Mut. Ins. Co. v. Donegan*,
    746 F.3d 497 (2d Cir. 2014).............................................................................13

*Lines v. Hartford Fin. Serves. Group, Inc.*,
    No. 3:21-CV-00029 (KAD), 2022 WL 408820 (D. Conn. Feb. 10, 2022)...........................30

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985)........................................................................................13

*McKeon V. Connecticut Water Co.*,
    No. KNL-CV-24-6071229-S, 2025 WL 2218705 (Conn. Super. Ct. July 31,
    2025) ......................................................................................................16

*Menkes v. Prudential Ins. Co. of Am.*,
    762 F.3d 285 (3d Cir. 2014)...............................................................................13

*Michael M. v. Nexsen Pruet Grp. Med. & Dental Plan*,
    No. 3:18-cv-00873, 2021 WL 1026383 (D.S.C. Mar. 17, 2021)...................................39

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993).....................................................................19, 20, 25

*Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*,
    No. 3:20CV1675(JBA), 2022 WL 743088 (D. Conn. Mar. 11, 2022) .............................31

*Murphy Med. Assocs., LLC v. Yale Univ.*,
    120 F.4th 1107 (2d Cir. 2024) ......................................................................12, 14

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995)........................................................................................13

*Naples v. Keystone Bldg. & Dev. Corp.*,
    295 Conn. 214 (2010) ....................................................................................11

*NEMS, PLLC v. Harvard Pilgrim Health Care of Connecticut, Inc.*,
    350 Conn. 525, 325 A.3d 196 (2024) ..............................................................21, 22

*Neurological Surgery, P.C. v. Aetna Health, Inc.*,
    511 F. Supp. 3d 267 (E.D.N.Y. Jan. 4, 2021)...................................................31, 32

*Nwachukwu v. Liberty Bank*,
    257 F. Supp. 3d 280 (D. Conn. 2017).............................................................18, 19

*O'Shea v. First Manhattan Co. Thrift Plan & Trust*,
    55 F.3d 109 (2d Cir.1995)...............................................................................33

*Oklahoma Firefighters Pension & Ret. Sys. v. Banco Santander (Mexico) S.A.*
    *Institucion de Banca Multiple*,
    92 F.4th 450 (2d Cir. 2024) .......................................................................................9

*Paneccasio v. Unisource Worldwide, Inc.*,
    532 F.3d 101 (2d Cir. 2008).......................................................................................13

*Patane v. Nestle Waters N. Am., Inc.*,
    761 F. Supp. 3d 424 (D. Conn. 2024).......................................................................20

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010).........................................................................................8

*Piccolo v. Am. Auto Sales, LLC*,
    195 Conn. App. 486 (2020) .................................................................................28, 29

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987).....................................................................................................13

*Pospisil v. Pospisil*,
    59 Conn. App. 446 (2000) .........................................................................................24

*Savage v. Scripto-Tokai Corp.*,
    147 F. Supp. 2d 86 (D. Conn. 2001) .....................................................................9, 10

*Sec. Inv. Prot. Corp. v. BDO Seidman, LLP*,
    222 F.3d 63 (2d Cir. 2000).........................................................................................26

*Shanshan Shao v. Beta Pharma, Inc.*,
    No. 3:14-CV-1177 (CSH), 2019 WL 7882485 (D. Conn. Sept. 23, 2019) .........11, 12

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983).....................................................................................................13

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)....................................................................................9, 25

*Simms v. Seaman*,
    308 Conn. 523 (2013) ...............................................................................................24

*Smith v. Local 819 I.B.T. Pension Plan*,
    291 F.3d 236 (2d Cir. 2002).......................................................................................8

*Smith v. Wells Fargo Bank, N.A.*,
    158 F. Supp. 3d 91 (D. Conn. 2016).........................................................................19

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)...............................................................................................20, 21

*Stein v. Horton,*
   99 Conn. App. 477 (2007) ....................................................................................28

*Stuart v. Freiberg,*
   316 Conn. 809 (2015) ........................................................................................26

*Szynkowicz v. Bonauito-O'Hara,*
   170 Conn. App. 213 (2017) ................................................................................15

*Tekdoc Servs., LLC v. 3i-Infotech, Inc.,*
   2009 WL 5064456 (D. Conn. Dec. 15, 2009) ....................................................11

*Timmons v. City of Hartford,*
   283 F. Supp. 2d 712 (D. Conn. 2003) ....................................................16, 33, 34

*Ultimate Nutrition, Inc. v. Leprino Foods Co.,*
   779 F. Supp. 3d 203 (D. Conn. 2025) ................................................................18

*Varity Corp. v. Howe,*
   516 U.S. 489 (1996) ....................................................................................33, 34

*Vertex, Inc. v. City of Waterbury,*
   278 Conn. 557 (2006) ........................................................................................27

*Waldman v. New Chapter, Inc.,*
   714 F. Supp. 2d 398 (E.D.N.Y. 2010) ........................................................19, 25

*Whitby Sch., Inc. v. Grenaille,*
   No. CV030195602, 2003 WL 23191957 (Conn. Super. Ct. Dec. 29, 2003) ....28, 29

**Statutes**

29 U.S.C. § 1002 ......................................................................................................36

29 U.S.C. § 1104 ................................................................................................34, 35

29 U.S.C. § 1109 ......................................................................................................35

29 U.S.C. § 1132 ............................................................................................30, 33, 35

29 U.S.C. § 1144 ................................................................................................12, 13

29 U.S.C. § 1149 ......................................................................................................36

Conn. Gen. Stat. § 38a-488c ............................................................................ *passim*

Conn. Gen. Stat. § 38a-816 ................................................................................21, 22

**Other Authorities**

29 C.F.R. § 2590.712 ................................................................................22, 37, 38

120 Cong. Rec. 29197 (1974) ...............................................................................13

78 Fed. Reg. 68,254 (Nov. 13, 2013)..............................................................23, 38

Fed. R. Civ. P. 9 ............................................................................................ *passim*

Fed. R. Civ. P. 12 .............................................................................................1, 8, 9

Defendants Anthem Health Plans, Inc. ("Anthem"), Carelon Behavioral Health, Inc. ("Carelon"), and Elevance Health, Inc. ("Elevance") (collectively, "Defendants") through their undersigned counsel, submit this Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint (ECF No. 1) ("Complaint" or "Compl.") filed by Michelle Mazzola and Guy Mazzola on their own behalf and on behalf of their minor child "Baby Doe," (collectively, the "Mazzolas"), Amec, LLC ("Amec"), and Lisa Kuller ("Kuller") (collectively, "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(2) and (6).

## INTRODUCTION

Plaintiffs are four individual insureds under Anthem insurance plans and an employer (Amec) that sponsors the group health plan of which three of the plaintiffs, the Mazzolas, are members. Carelon provides mental health and related administrative services to Anthem and lacks privity with any of the Plaintiffs. Carelon and Anthem are both subsidiaries of Elevance, an Indiana Corporation with its principal place of business in Indiana, not subject to this Court's personal jurisdiction.

Plaintiffs allege that "Defendants'" directory of participating, or "in-network," providers contains inaccurate information about the listed mental-health providers. Plaintiffs contend these alleged inaccuracies render the information provided to them regarding their insurance plans deceptive, and assert these inaccuracies caused them to be unable to identify in-network providers. They assert this resulted in damages due to delayed treatment and/or incurred out-of-pocket costs to see out-of-network providers. Plaintiffs also allege that Defendants failed to appropriately pay benefits due under their plans, imposed more stringent treatment limitations on certain behavioral health services, and improperly denied treatments.

Based on these allegations, Plaintiffs assert eleven causes of action on behalf of themselves and a putative class, seven arising under state law and the remaining four arising under the

Employee Retirement Income Security Act of 1974 ("ERISA"): (1) breach of contract with individual members; (2) breach of contract with employers; (3) breach of the covenant of good faith and fair dealing; (4) violation of the Connecticut Unfair Trade Practices Act; (5) fraudulent misrepresentation; (6) negligent misrepresentation; (7) unjust enrichment; (8) improper denial of benefits under ERISA; (9) breach of fiduciary duty under ERISA; (10) false statements and representations under ERISA; and (11) violation of the Mental Health Parity and Addiction Equity Act under ERISA.

Defendants dispute the factual allegations of the Complaint and deny that they, individually or collectively, publish a "deceptive" provider directory. However, even if Plaintiffs' allegations are accepted as true, the Complaint is subject to dismissal because each of Plaintiffs' claims is legally deficient.

As a threshold matter, this Court lacks personal jurisdiction over Elevance because it is not "at home" in Connecticut such that it would be subject to general jurisdiction, and Plaintiffs have not alleged contacts between Elevance and Connecticut that would subject it to specific jurisdiction related to the claims in this case. Because the Court lacks personal jurisdiction over Elevance, it must dismiss all claims as to Elevance and dismiss it from the action.

Moreover, even if Elevance was subject to jurisdiction, it did not administer any of the benefits alleged to be at issue, as it is a publicly held holding company that is the ultimate parent of Anthem. As such, Plaintiffs have no viable claims against Elevance.

Next, Plaintiffs' first seven causes of action—those arising under state law—are preempted by ERISA to the extent they are asserted on behalf of the Mazzolas or Amec. Those parties affirmatively allege that the Anthem Silver Pathway CT PPO plan, upon which their claims in this litigation are based, is subject to ERISA as an employer-sponsored plan. All state-law claims

related to the benefits due under that plan are therefore preempted, and Kuller is the only Plaintiff on whose behalf those claims could be pursued.

Turning then to the individual causes of action, Plaintiffs' first claim for breach of contract must be dismissed as to Elevance and Carelon because Kuller lacks contractual privity with either Elevance or Carelon. The only contract at issue is Kuller's Anthem Blue Cross Blue Shield Bronze PPO Pathway plan, which she alleges is administered by Anthem. Plaintiffs do not allege a contract exists between Kuller and Elevance or Carelon, and they therefore cannot establish an existing contract—an essential element to assert a breach of contract claim against Elevance or Carelon. The Complaint also fails to state a claim for breach of contract more generally because the allegations identify no term of Kuller's insurance contract that Anthem's alleged conduct breached. Plaintiffs' first cause of action accordingly must be dismissed.

Plaintiffs' second claim for breach of contract on behalf of non-ERISA employer plaintiffs must be dismissed because no party to this action has standing to raise this claim. The only employer plaintiff in this litigation is Amec, which Plaintiffs affirmatively allege contracted to provide an ERISA-governed plan to its employees. Thus, Amec could not assert a breach of contract claim because any such claim by it would be preempted by ERISA. Accordingly, Plaintiffs' second cause of action must be dismissed for lack of standing.

Plaintiffs' third claim, for breach of the covenant of good faith and fair dealing, must likewise be dismissed as to Elevance and Carelon for lack of contractual privity, as such a claim requires the existence of an enforceable contract between the parties. That claim must also be dismissed for failure to state a claim as to all defendants. Under Connecticut law, a claim for breach of the covenant of good faith and fair dealing must be tied to a breach of express contractual provisions. As Plaintiffs have failed to allege the operative terms of their insurance contract with

Anthem—as noted above—Plaintiffs' assertions of bad faith are unmoored from any express contractual provision and thus fail to establish the requisite nexus to the contract's terms to support a claim for breach of the covenant of good faith and fair dealing. Plaintiffs' third cause of action accordingly must be dismissed.

Plaintiffs' fourth claim, for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), fails because Plaintiffs' allegations under CUTPA sound in fraud, and thus Plaintiffs were required—but failed—to plead with the specificity required by Rule 9(b). As Plaintiffs' allegations improperly lump Defendants together, fail to describe the context of purported false statements, and fail to explain why asserted misrepresentations are false, Plaintiffs' allegations fail to state a claim. Plaintiffs' statutory bases for CUTPA liability also fail, because Plaintiffs fail to allege facts that plausibly demonstrate a disparity in Anthem's treatment of mental health benefits under Connecticut law, which is the only purported statutory violation Kuller has standing to assert. Plaintiffs' accordingly have failed to allege a viable CUTPA claim.

Plaintiffs' fifth and sixth claims for fraudulent and negligent misrepresentation must be dismissed because Plaintiffs have failed to plead fraud with particularity. Plaintiffs' allegations of fraud fail to identify specific false statements, fail to allege the context around the making of those statements—the who, where, and when—and in some cases fail to even allege how the statement is false. Moreover, Plaintiffs again lump all Defendants together as having made misrepresentations without identifying which Defendant made any particular misrepresentation and how that Defendant knew the representation was false. These allegations fail to meet Rule 9(b)'s specificity requirement for fraud claims. Moreover, Kuller fails to plead facts that establish that she saw or was aware of any misrepresentations at the time she chose to enroll in her Anthem plan—the only basis for reliance Plaintiffs have identified—and thus the allegations fail to

establish that Kuller actually relied on any purported misrepresentations, let alone whether any such reliance would have been justifiable.

Plaintiffs' seventh claim for unjust enrichment must be dismissed as to Elevance and Carelon because Plaintiffs plead no facts demonstrating that Elevance or Carelon received any benefit as a result of Kuller's conduct, an essential element of such a claim. And this claim must be dismissed as to Anthem because Plaintiffs expressly incorporated into their unjust enrichment cause of action allegations that an express contract existed between Anthem and Kuller and that Anthem breached that contract. As the availability of a breach of contract remedy precludes the availability of unjust enrichment, under Connecticut law this pleading decision renders Plaintiffs' unjust enrichment claim insufficient and subject to dismissal.

Plaintiffs' remaining four claims arise under ERISA and are pleaded on behalf of the Mazzolas and Amec. As neither the Mazzolas nor Amec are in privity with Elevance or Carelon with respect to their ERISA plan, Plaintiffs cannot state a claim against Elevance or Carelon under ERISA. Each of those claims also fail as to Anthem.

Plaintiffs' eighth claim for benefits due under the Mazzolas' ERISA plan fails because Plaintiffs have not adequately alleged the exhaustion of administrative remedies for these claims as required under ERISA. And while Plaintiffs attempted to allege administrative exhaustion for a small handful of speech and occupational therapy claims, those allegations fail to state a claim because—as with the breach of contract cause of action—Plaintiffs have failed to plead the relevant terms of the ERISA plan or to explain how Anthem's denial of benefits was unreasonable or legally erroneous.

Plaintiffs' ninth claim for breach of fiduciary duty fails because the only available remedies for a breach of fiduciary duty under ERISA are equitable in nature. Because the allegations of

Plaintiffs' complaint, taken as a whole, demonstrate that Plaintiffs' claims are seeking a monetary damages remedy and not any legitimate equitable relief, Plaintiffs' fiduciary duty claim must be dismissed.

Plaintiffs' tenth claim for false statements and representations under ERISA does not state a claim because the statute, by its plain terms, applies only to multiple employer welfare arrangements as defined by ERISA. Plaintiffs fail to allege any facts that, if true, would establish that the Anthem plan at issue is such a multi-employer arrangement and, as a result, this cause of action fails.

Plaintiffs' eleventh (and final) claim asserts a violation of the federal Mental Health Parity and Addiction Equity Act ("MHPAEA"), which is incorporated into ERISA, and which prohibits the imposition of more restrictive treatment limitations on mental health benefits. The Complaint fails to state such a claim because Plaintiffs' allegations focus on differences in outcomes—denial of benefits, number of providers available in certain specialties—rather than the process used by Defendants to apply treatment limitations across benefit classifications. Moreover, even if Plaintiffs' criticisms of the end result of those processes could establish an MHPAEA violation— and they cannot—Plaintiffs fail to meaningfully compare limitations across benefits, because Plaintiffs do not allege any specific facts regarding how any limitations impact medical/surgical benefits to which the Court could compare the purported impacts on mental-health benefits. Because Plaintiffs cannot establish that limitations applied to mental health benefits are more stringent without first alleging how stringently those limitations are applied to medical/surgical benefits, Plaintiffs' claim under MHPAEA must be dismissed.

## **FACTUAL ALLEGATIONS**

Anthem offers health insurance plans to residents of Connecticut. Compl. ¶ 23. Carelon provides mental health and related administrative services to Anthem with respect to its insurance

plans. *Id*. ¶ 24. Elevance is the ultimate corporate parent of Carelon and Anthem and is incorporated and has its principal offices in Indiana. *Id*. ¶ 25.

Plaintiffs are members or purchasers of Anthem insurance plans. *Id*. ¶¶ 17–22. Amec is the sponsor of an ERISA-governed employee welfare benefit plan of which the Mazzolas are beneficiaries, which contracts with Anthem to provide the Anthem Silver Pathway CT PPO health insurance plan to Amec's employees. *Id*. ¶ 21. Kuller is a member of the Anthem Blue Cross Blue Shield Bronze PPO Pathway plan, a non-ERISA-governed individual plan purchased on the Connecticut health insurance marketplace. *Id*. ¶ 22; 157.

Plaintiffs allege "Defendants'" directory of in-network providers for the Anthem insurance plans at issue contains inaccurate information regarding mental health providers, including by listing providers that are not, in fact, in-network, and by listing inaccurate information for those who are. *See, e.g.*, Compl. ¶¶ 3, 9, 200–08. Plaintiffs allege this renders Defendants' provider directory, marketing materials, and other representations "deceptive." *Id.* ¶¶ 9, 205–06, 209–21. Plaintiffs assert those alleged inaccuracies damaged them by causing them to delay treatment and/or incur the costs of using out-of-network providers. *See, e.g., id.* ¶¶ 4, 13, 258, 292. Plaintiffs further contend Defendants improperly deny covered services, fail to credit expenditures to deductibles, and fail to appropriately reimburse members for costs incurred when they use out-of-network providers. *See, e.g., id.* ¶ 4, 83, 103.

Based on these allegations, Plaintiffs assert causes of action for: (1) two counts of breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) violation of CUTPA, (4) fraudulent misrepresentation; (5) negligent misrepresentation; (6) unjust enrichment; (7) denial of benefits under ERISA; (8) breach of fiduciary duty under ERISA; (9) false statements under ERISA; and (10) violation of MHPAEA. Compl. ¶¶ 278–375.

## LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the "plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). To survive such a motion, the plaintiff must make a "prima facie showing that jurisdiction exists," *i.e.*, the Complaint must include "legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Id.* (internal quotation marks omitted).

Each of Plaintiffs' claims is also subject to dismissal pursuant to Rule 12(b)(6), as the allegations of the Complaint fail to state a plausible claim for which Plaintiffs are entitled to relief. On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes the truth of the factual allegations of the complaint and draws all reasonable inferences in favor of the plaintiff. *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002). However, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). Thus, the Court is not required to assume the truth of "legal conclusions," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Where the Complaint alleges fraud, the Court "must also view the complaint in light of Rule 9(b), which requires that 'the circumstances constituting fraud . . . be stated with particularity.'" *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127 (2d Cir. 1994) (quoting Fed. R. Civ. P. 9(b)). The particularity called for by Rule 9(b) requires "specify[ing] the time, place,

speaker, and content of the alleged misrepresentations" and "[w]here multiple defendants are asked to respond to allegations of fraud," the allegations must "inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

## <u>ARGUMENT</u>

## I.    THIS COURT LACKS PERSONAL JURISDICTION OVER ELEVANCE

Elevance must be dismissed as a party to this action because Elevance is not subject to personal jurisdiction in Connecticut. If a court lacks personal jurisdiction over a party, it must dismiss the case as to that party. Fed. R. Civ. P. 12(b)(2). "As a general rule, the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with federal law entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Savage v. Scripto-Tokai Corp.*, 147 F. Supp. 2d 86, 90 (D. Conn. 2001) (internal quotation marks omitted). However, because Connecticut's long-arm statute "stops short of authorizing jurisdiction to the extent permissible under the due process clause," a "finding that the due process clause of the Constitution prohibits this Court from asserting jurisdiction" precludes long-arm jurisdiction. *Id*. "Personal jurisdiction can be general or specific." *Oklahoma Firefighters Pension & Ret. Sys. v. Banco Santander (Mexico) S.A. Institucion de Banca Multiple*, 92 F.4th 450, 456 (2d Cir. 2024). The Complaint establishes neither form of jurisdiction over Elevance.

As to general jurisdiction, except for "exceptional case[s]," "a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014). Elevance is incorporated in Indiana, and has its

principal place of business in Indianapolis, Indiana.  Declaration of Debra Cheffer ["Cheffer Decl."] ¶ 3; Compl. ¶ 25.  Plaintiffs have pleaded no "exceptional" circumstances that would subject Elevance to general jurisdiction in Connecticut, and this Court thus lacks general personal jurisdiction over Elevance.

To establish specific jurisdiction, a plaintiff must show that the claims at issue "arise out of or relate to the defendant's contacts with the forum state," that the defendant "'purposefully directed' its activities at residents of the forum state, and that the defendant could reasonably foresee being haled into court there." *Savage* , 147 F. Supp. 2d at 91.  As to the second and third elements, "[i]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id*. (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Here, the allegations of the Complaint fail to establish *any* of the requisite elements of specific jurisdiction, because the Complaint is devoid of allegations that Elevance took any act or engaged in any conduct in Connecticut at all.  Rather, the Complaint alleges only that Elevance "sets policies" and "directs" some of Anthem and Carelon's activities, Compl. ¶ 25, and that its relationship with its subsidiaries is "close and inextricably intertwined," *id*. ¶ 25.  But these allegations do not demonstrate that Elevance "conduct[s] activities within the forum State," and thus cannot provide a basis for personal jurisdiction. *Savage*, 147 F. Supp. 2d at 91.  And Elevance does not sell insurance policies or provide claims administration services in Connecticut, is not licensed by the Connecticut Insurance Department, and does not have a contract with any of the Connecticut-based Plaintiffs. Cheffer Decl. ¶¶ 4-7.

Nor can the presence of Elevance's subsidiaries in Connecticut supply jurisdiction, even assuming the Court has jurisdiction over Anthem and Carelon.   Under Connecticut law,

10

jurisdiction over a subsidiary does not establish jurisdiction over the parent. *Leonard v. Gen. Motors L.L.C.*, 504 F. Supp. 3d 73, 86 (D. Conn. 2020). Rather, "to establish jurisdiction based on the presence of a subsidiary, the parent corporation must fully control the subsidiary corporation such that the corporate veil must be pierced." *Id*. Thus, jurisdiction under Connecticut's long-arm statute—a pre-requisite to the constitutional exercise of jurisdiction—is available only where "the corporate veil [is] pierced so that acts of the domestic subsidiary can be imputed to the absent parent." *Shanshan Shao v. Beta Pharma, Inc.*, No. 3:14-CV-1177 (CSH), 2019 WL 7882485, at *10 (D. Conn. Sept. 23, 2019).

However, "Connecticut courts generally pierce the corporate veil only under 'exceptional circumstances,' such as when 'the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice.'" *Leonard*, 504 F.Supp. 3d at 86 (quoting *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 233, 990 A.2d 326 (2010)). And the "key" showing required to pierce the corporate veil is "improper use of the corporate form." *Id*.

Here, "the complaint does not articulate any factual allegations that suggest that piercing the corporate veil for jurisdictional purposes is warranted." *See id*. While Elevance is the ultimate corporate parent of Anthem and Carelon, "[m]ere ownership by a parent corporation of a subsidiary corporation present in the forum state generally will not subject the parent to personal jurisdiction in that forum." *Id*. (quoting *Tekdoc Servs., LLC v. 3i-Infotech, Inc.*, 2009 WL 5064456, at *5 (D. Conn. Dec. 15, 2009)). Nor does Plaintiffs' allegation that Elevance is "inexplicably intertwined" with Anthem and Carelon suffice. *Id*. Rather, Plaintiffs would need to allege facts showing that Elevance and its subsidiaries "failed to observe the corporate formalities" such that there was no "real" separation between the entities. Plaintiffs do not—and cannot—

plead any such facts, and Elevance accordingly is not subject to specific personal jurisdiction, which requires its dismissal.[1]

## II.    PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED

Plaintiffs' first through seventh claims all arise under Connecticut state law.  To the extent these causes of action are asserted by and on behalf of the <u>Mazzolas and Amec</u>, they are preempted by ERISA and must be dismissed.  As to <u>Kuller</u>, whose claims are not ERISA preempted, each alleged claim also fails for the reasons discussed below.

### A.    All State Law Claims Asserted by the Mazzolas and Amec Are Preempted by ERISA

Plaintiffs' third through seventh claims are alleged on behalf of all Plaintiffs, despite Plaintiffs' admission that the Mazzolas are members of—and Amec the employer sponsor of—an ERISA governed plan.[2]  The Mazzolas' and Amec's state-law claims are thus preempted by ERISA's "expansive pre-emption provisions" under Section 514, *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208 (2004), which expressly "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA, *Murphy Med. Assocs., LLC v. Yale Univ.*, 120 F.4th 1107, 1114 (2d Cir. 2024) (quoting 29 U.S.C. § 1144(a)).

The Supreme Court has consistently held that ERISA's "carefully integrated civil enforcement provisions," *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985), "were intended to be exclusive," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).  "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health*,

---

[1] In the event the Court were to conclude it had personal jurisdiction over Elevance, all arguments herein seeking dismissal of claims against Carelon apply with equal or greater force to Elevance, and Elevance alternatively incorporates and adopts those arguments as grounds for dismissal of claims against it.

[2] Plaintiffs' first and second causes of action are alleged only on behalf of members and employee sponsors of non-ERISA plans, as discussed below.  Compl. at 62, 64.

542 U.S. at 208.  ERISA's preemption provisions operate to "eliminate the threat of conflicting and inconsistent State and local regulation."  *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657 (1995) (quoting 120 Cong. Rec. 29197 (1974)).  ERISA therefore preempts state law claims "that seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.'" *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (citation omitted).

ERISA's express preemption provision is set forth in ERISA section 514(a), which preempts "any and all State laws insofar as they . . . relate to any employee benefit plan" covered under the statute.  29 U.S.C. § 1144(a).  State laws "relate to" an ERISA plan for purposes of preemption if the law either has a "reference to" or has a "connection with" the plan at issue.  *See Liberty Mut. Ins. Co. v. Donegan*, 746 F.3d 497, 504 (2d Cir. 2014) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 (1983)).  The "related to" language in that provision is "deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co.*, 481 U.S. 41, 46 (1987) (cleaned up).

A state law claim makes "reference to" an ERISA plan when: (1) "the existence of an [ERISA] plan is a critical factor in establishing liability," *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139–40 (1990); or (2) the court's examination will "require interpreting the plan's terms."  *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014).  And a state law claim has a "connection with" an insurance benefits plan when the claim "provide[s] an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee." *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989).

Here, Plaintiffs expressly allege the plan under which the Mazzolas seek benefits—and which Amec acquired on their behalf—is an ERISA governed plan. Compl. ¶¶ 17–21; 361. And the ERISA plan is a "critical factor" in establishing liability because each of these claims is premised on Defendants' failing to provide the benefits available under that insurance plan:

- Plaintiffs' claim for breach of the covenant of good faith and fair dealing is expressly based on a purported violation of the Plaintiffs' ERISA-governed insurance contract. *Id*. ¶¶ 296-98.

- Plaintiffs' claim for violation of CUTPA is premised on allegations Defendants "misrepresenting the health care benefits available to members," the number of providers from whom services could be obtained, and the cost of obtaining care, and limiting benefits available. *Id*. ¶¶ 307-09, 311, 313, 315, 317, 319.

- Plaintiffs' fraud claims are based on allegations that Defendants misrepresented the availability of mental health providers and the cost to obtain care. *Id*. ¶¶ 328-29, 339-40.

- And Plaintiffs' unjust enrichment claim relies on allegations that Plaintiffs conferred a benefit on Defendants by "enrolling in Anthem's health insurance" but did not "receive the full value of what they were owed" and "unjustly incurred" out-of-pocket costs. *Id*. ¶¶ 346, 348, 350.

For each of those claims, the insurance plan in which the Mazzolas were enrolled is a "critical factor" in the claim, and each claim will require the Court to examine and interpret the plan's terms to determine what promises and representations Defendants actually made to the Plaintiffs. Plaintiffs' claims thus make "reference to" an ERISA plan and, accordingly, "relate to" the ERISA plan such that the claims fall within ERISA's preemption provision. Plaintiffs' third through seventh claims are thus preempted by ERISA as to the Mazzolas and Amec, and "must be dismissed." *Murphy Med. Assocs.*, 120 F.4th at 1114.

### B.    Plaintiffs' State Law Claims Must Be Dismissed for Failure to State a Claim

Because Plaintiffs' state-law claims are preempted as to the Mazzolas and Amec, those claims may be asserted only on behalf of the remaining Plaintiff: Kuller. However, each of Plaintiffs' claims must be dismissed for failure to state a claim as they relate to Kuller.

1.    __Kuller Fails to State a Claim for Breach of Contract__

To plead a plausible claim for breach of contract under Connecticut law, Plaintiffs must allege "(1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the opposing party; (4) direct and proximate cause; and (5) damages."  *See Henderson v. Wells Fargo Bank, N.A.*, No. 3:13CV378 (JBA), 2017 WL 731780, at *6 (D. Conn. Feb. 21, 2017) (quoting *McMann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 503–04 (2006)).  This claim is alleged only on behalf of individuals enrolled in non-ERISA plans and thus is asserted only by Kuller.  Compl. at 62 & ¶¶ 25.  The Complaint fails to state a claim for breach of contract as to Kuller.

As an initial matter, the claim must be dismissed as it relates to Carelon and Elevance because Plaintiffs do not allege an agreement between those entities and Kuller.  "[I]t is axiomatic that an action 'for breach of contract may not be maintained against a person who is not a party to the contract.'" *Szynkowicz v. Bonauito-O'Hara*, 170 Conn. App. 213, 224, 154 A.3d 61, 69 (2017). The only contract Plaintiffs have identified to which Kuller is a party is her insurance contract with Anthem: the Anthem Blue Cross Blue Shield Bronze PPO Pathway plan. Compl. ¶¶ 22, 155. Plaintiffs do not allege either Carelon or Elevance is a party to that insurance contract. Accordingly, Plaintiffs have not alleged the "formation of an agreement" between Kuller and Carelon or Elevance, *Henderson*, 2017 WL 731780, at *6, and Kuller therefore cannot maintain a breach of contract claim against either party, *Szynkowicz*, 170 Conn. App. at 224.

Moreover, Plaintiffs' breach of contract claim fails on the merits because the allegations of the Complaint do not plausibly allege conduct by Defendants that breached a term of Kuller's agreement with Anthem.  "In asserting a breach of contract claim, the complaint must allege the provisions of the contract upon which the claim is based."  *Timmons v. City of Hartford*, 283 F. Supp. 2d 712, 718 (D. Conn. 2003); *see also McKeon V. Connecticut Water Co.*, No. KNL-CV-

24-6071229-S, 2025 WL 2218705, at *4 (Conn. Super. Ct. July 31, 2025) ("To adequately plead a breach of that contract, however, Superior Court judges have consistently held that the plaintiff must identify a specific provision of the contract that has been violated").  This is because to "determin[e] whether a breach has been alleged, the court must look to the language of the contract."  *Id*.

Here, other than setting forth the contract's coinsurance requirements and terms for calculating the maximum allowed amount the insurance plan would pay for out-of-network services, Compl. ¶¶ 178, 192, Plaintiffs allege no relevant terms of Kuller's insurance contract with Anthem.[3]  Thus, Plaintiffs' allegations that Kuller was unable to identify a provider within a certain distance from her home, Compl. ¶ 160, or that Anthem only pays a certain amount for out-of-network services, Compl. ¶¶ 164-65, cannot establish a breach absent allegations that Anthem was contractually obligated to make a provider available within that distance or to calculate a greater allowed amount for out-of-network services.  Because Plaintiffs have not alleged the specific provisions of Kuller's insurance contract they contend were breached, their cause of action for breach of contract necessarily fails and must be dismissed.  *See Timmons*, 283 F. Supp. 2d at 718.

2.    **Plaintiffs' Second Cause of Action for Breach of Contract Must be Dismissed for Lack of Standing**

Plaintiffs' second claim for breach of contract must be dismissed because Plaintiffs lack standing to bring suit on behalf of non-parties to the case.  "A party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

---

[3] It appears Plaintiffs intended to attach a copy of Kuller's "Summary of Benefits and Coverage" for her insurance plan to their Complaint, *see* Compl. ¶ 198, but the Complaint was filed without exhibits.  *See generally* ECF No. 1.

parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). Thus, a plaintiff lacks standing to assert claims to vindicate the rights of others unless the plaintiff can show a "close" relationship with the person who possesses the right, or the person is hindered in protecting his own interests. *Id*.

Here, Plaintiffs' second cause of action is alleged on behalf of "all employer Plaintiffs and Class members which provided non-ERISA plans." Compl. at 64. However, the only "employer Plaintiff" that is a party to this action is Amec. *See* Compl. ¶ 287 (explaining second cause of action "includes entities which have entered into contracts with Defendants to provide health insurance . . . to individual employees"); ¶ 21 (explaining Amec "contracted with Anthem to purchase and provide the Anthem Silver Pathway CT PPO insurance plan for Plaintiffs and other class members"). But Amec "purchased . . . an ERISA plan," Compl. ¶ 361, and it therefore is not within the class of persons or entities on whose behalf the second cause of action is asserted. Because there is no "employer Plaintiff" that is a party to the case, and Plaintiffs have not alleged the existence of such an entity that meets the exceptions to the bar on third-party standing, Plaintiffs lack standing to assert their second cause of action on behalf of unidentified non-parties, and that claim must be dismissed.

### 3. Kuller Fails to State a Claim for Breach of The Covenant of Good Faith and Fair Dealing

To plead a breach of the covenant of good faith and fair dealing, a plaintiff must allege "acts by which a defendant allegedly impeded the plaintiff's right to receive reasonably expected contract benefits," and that those acts "were taken in bad faith." *Landry v. Spitz*, 102 Conn. App. 34, 47, 925 A.2d 334, 344 (2007). "The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term." *Hoskins v. Titan Value Equities Grp., Inc.*, 252 Conn. 789, 793, 749 A.2d 1144, 1146 (2000).

Thus, under Connecticut law, "the claim [that the covenant has been breached] must be tied to an alleged breach of a specific contract term, often one that allows for discretion on the part of the party alleged to have violated the duty." *Landry*, 102 Conn. App. at 47; *Geysen v. Securitas Sec. Servs. USA, Inc.*, 322 Conn. 385, 399, 142 A.3d 227, 237 (2016) (citing *Landry* favorably); *see also Nwachukwu v. Liberty Bank*, 257 F. Supp. 3d 280, 296 (D. Conn. 2017) ("Connecticut courts have adopted the view that a claim for breach of the implied covenant of good faith and fair dealing must be tied to an alleged breach of an express contract term."). "[T]he covenant 'is not implicated by conduct that does not impair contractual rights.'" *Ultimate Nutrition, Inc. v. Leprino Foods Co.*, 779 F. Supp. 3d 203, 224 (D. Conn. 2025) (quoting *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 794-795, 67 A.3d 961 (2013)).

As with Plaintiffs' breach of contract claim, the absence of contractual privity is fatal to Plaintiffs' claim against Carelon or Elevance for breach of the covenant of good faith and fair dealing. "[T]he existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing." *Hoskins*, 252 Conn. at 793. Because Plaintiffs allege no contract between Kuller and Carelon or Elevance, they cannot maintain a claim against those parties for breach of the covenant of good faith and fair dealing, and that claim must be dismissed as to Carelon and Elevance.

Furthermore, as discussed with respect to Plaintiffs' first claim, Plaintiffs have not alleged the specific terms or provisions of Kuller's contract with Anthem that Defendants' conduct purportedly breached. Because Plaintiffs "ha[ve] not stated a claim for breach of the contract's express terms," they cannot maintain a claim for breach of the covenant of good faith and fair dealing. *Nwachukwu*, 257 F. Supp. at 280.

### 4.    Kuller Fails to State a Claim for Violation of CUTPA

"To state a claim under CUTPA, a plaintiff must plead that she (1) suffered an ascertainable loss of money or property, (2) that was caused by, (3) an unfair method of competition or an unfair or deceptive act in the conduct of any trade or commerce." *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 100 (D. Conn. 2016), *aff'd*, 666 F. App'x 84 (2d Cir. 2016). "[A] violation of CUTPA may be established by showing either an actual deceptive practice or a practice amounting to a violation of public policy." *Caires v. JP Morgan Chase Bank, N.A.*, 880 F. Supp. 2d 288, 299 (D. Conn. 2012). "When a plaintiff in federal court bases a CUTPA claim on fraud allegations, the plaintiff must satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b)." *Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*, No. 3:08-CV-1958(CFD), 2010 WL 1882316, at *9 (D. Conn. May 10, 2010).

### a.    Fraud-based CUTPA Claims

Here, Kuller's allegations of putative violations of CUTPA all sound in fraud. *See* Compl. ¶¶ 307–09, 317, 319–22. Accordingly, Plaintiffs were required to satisfy Rule 9(b)'s particularity requirement with respect to these claims and failed to do so. To comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *see also Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 402 (E.D.N.Y. 2010) (citing *Mills* for the proposition that a plaintiff must "state where, when and to whom the statements were made"). "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" *Mills*, 12 F.3d at 1175

Plaintiffs fail to meet Rule 9(b)'s pleading requirements with respect to their CUTPA claim because they do not allege with specificity the false representations that they contend violate

CUTPA.  All of Plaintiffs' CUTPA allegations, and the vast majority of their general factual allegations, attribute allegedly false statements generally to "Defendants," without specifying which of the three defendants purportedly made any given statement or representation.  *See* Compl. ¶¶ 307–09, 317, 319–22; *see also, e.g.*, *id*. ¶¶ 4, 9, 202, 205–07, 222–26, 249.  Even where the purported speaker is identified, however, Plaintiffs fail to specify the actual false statements, *see, e.g., id.* ¶¶ 209, 266, to identify the circumstances of the purported statement, including when, how, and to whom it was made, *see, e.g., id*. ¶¶ 212, 215–17, or to explain why the statements were fraudulent, *see, e.g., id.* ¶¶ 171–76, 201.[4]  These allegations fail to satisfy Rule 9(b)'s particularity requirements, and thus fail to provide adequately pleaded support for a fraud-based CUTPA claim.

Moreover, the allegations of the Complaint do not establish that any of the purported false representations were made *to* Kuller, that she was aware of the statements, or that she acted in reliance on them.  *Cf. Patane v. Nestle Waters N. Am., Inc.*, 761 F. Supp. 3d 424, 446 (D. Conn. 2024) (common law fraud requires a showing "the plaintiff has received, believed, and acted upon the defendant's misrepresentation).  Plaintiffs' allegations thus fail to establish a fraud-based CUTPA claim.

### b.    CUTPA Claims Based on Purported Statutory Violations

Several of Plaintiffs' CUTPA allegations also invoke purported violations of Connecticut state statutes.  The majority of these allegations relate to either (1) Anthem's decisions regarding coverage of autism treatment, which Kuller never sought from Anthem, or (2) Anthem's denial of

---

[4]  Plaintiffs' allegations are more specific with respect to purported false statements to the Mazzolas, however, ERISA pre-empts any CUTPA claim by the Mazzolas, as discussed above, and Kuller lacks standing to assert a CUTPA claim based on any misrepresentation to the Mazzolas, as she cannot trace any concrete injury to misrepresentations allegedly made to others. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

coverage on various bases that Kuller does not allege applied to her own requests for benefits. Compl. ¶¶ 310–13, 315.  Kuller accordingly lacks standing to assert a CUTPA claim on these bases, as she has no injury traceable to the alleged conduct.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Thus, the only basis on which Kuller attempts to assert a CUTPA claim based on a violation of Connecticut law is Plaintiffs' allegation that Defendants violated "Conn. Gen. Stat. § 38a-488c by knowingly and intentionally maintaining an insufficient network of mental health providers." Compl. ¶ 315.  That claim fails for two independent reasons.

First, the claim fails because a violation of General Statutes § 38a-488c cannot provide the basis for a CUTPA claim under Connecticut law.  As the Connecticut Supreme Court has made clear, the Connecticut Unfair Insurance Practices Act ("CUIPA") is the "comprehensive and exclusive means of identifying unfair insurance practices" for purposes of CUTPA.  *See NEMS, PLLC v. Harvard Pilgrim Health Care of Connecticut, Inc.*, 350 Conn. 525, 534, 325 A.3d 196, 202 (2024) (citing *State v. Acordia, Inc.*, 310 Conn. 1, 73 A.3d 711 (2013)).  Accordingly, "unless an insurance related practice violates CUIPA . . . it cannot be found to violate CUTPA."  *Id*. at 537, 539.  And an insurance-related practice is an unfair practice in violation of CUIPA only if it is (1) enumerated in General Statutes § 38a-816 or (2) the Insurance Commissioner has made a specific determination that the practice violates CUIPA.  *See id*. at 535 (citing Conn. Gen. Stat. § 38a-815).  A violation of General Statutes § 38a-488c is not enumerated as an unfair practice under § 38a-816, nor has there been any showing the Insurance Commissioner has made a determination that a violation of General Statutes § 38a-488c is an unfair practice.  Accordingly, Plaintiffs' CUTPA claim for violation of General Statutes § 38a-488c fails. *See NEMS, PLLC*, 350 Conn. at 537.

Second, Plaintiffs' CUTPA claim fails because the Complaint does not plausibly allege a violation of General Statutes § 38a-488c. That statute prohibits insurers from "apply[ing] a nonquantitative treatment limitation to mental health and substance use disorder benefits unless [the insurer] applies such limitation to such benefits in a manner that is comparable to, and not more stringent than, the manner in which [the insurer] applies such limitation to medical and surgical benefits." Conn. Gen. Stat. § 38a-488c. This provision of Connecticut law thus mirrors MHPAEA which generally prohibits the imposition of more restrictive treatment limitations on mental health benefits, but permits nonquantitative treatment limitations to be imposed so long as the "processes, strategies, evidentiary standards, or other factors" used to apply the limitations "are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors" used to apply the limitation to medical/surgical benefits in the same treatment classification. 29 C.F.R. § 2590.712(c)(4)(i) (2014).

The underpinnings for this claim are Plaintiffs' allegations that "Defendants failed to supply in-network mental health providers within a reasonable distance," but that Kuller was able to "identif[y] in-network providers within a reasonable distance" for analogous medical/surgical benefits. Compl. ¶ 166–67. But Plaintiffs' claim fails because Conn. Gen. Stat. § 38a-488c, by its plain terms, considers not the *outcome* of a particular nonquantitative treatment limitation's application, but instead the "manner" in which it is applied. Thus, this Connecticut statute, like MHPAEA, is concerned with whether a comparable *process* is used to apply treatment limitations. And "[d]isparate results alone do not mean that" a nonquantitative treatment limitation fails to "comply with [parity] requirements." Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 78 Fed. Reg. 68,254 (Nov. 13, 2013); *see K.K. v. Premera Blue Cross*, No. C21-1611-JCC, 2023 WL 3948236, at *5 (W.D. Wash. June 12,

2023), aff'd No. 23-35480, 2025 WL 415721 (9th Cir. Feb. 6, 2025) ("All that the Parity Act requires is that the process in determining how best to treat behavioral versus medical disorders be based on a similar level of evidence and support.").

Plaintiffs' allegation that Kuller more readily found in-network medical/surgical providers within a "reasonable distance" than providers for a specific mental health condition does not demonstrate any disparity in the "manner" or process by which Defendants apply any nonquantitative treatment limitation, but only a difference in outcome. That is insufficient to establish a violation of Conn. Gen. Stat. § 38a-488c. *Cf. K.K*, 2023 WL 3948236, at *5 (granting summary judgment to defendants where plaintiffs identified no evidence that defendants "employed differing processes, strategies, or evidentiary standards to develop" nonquantitative treatment limitations for mental health treatment as compared to skilled nursing).

But even if allegations regarding the comparative accessibility of mental health providers were, in general, capable of establishing a violation of Conn. Gen. Stat. § 38a-488c, Plaintiffs allegations here are insufficient because they do not actually meaningfully compare accessibility across benefits. As Plaintiffs acknowledge, Kuller did not attempt to contact all of the providers Defendants identified within the 30-mile radius that Kuller specified for her provider search but instead elected to obtain out-of-network treatment after reviewing 15 of 20 potential providers. *See* Compl. ¶¶ 160, 162–63. While Plaintiffs allege Kuller was able to identify providers for analogous medical/surgical benefits, the allegations do not state what radius Kuller searched in to identify medical/surgical providers, how many providers the search yielded, or how many providers Kuller contacted for any given service to identify an acceptable provider. In short, establishing a disparity requires a comparison between mental health and medical/surgical benefits: Plaintiffs cannot establish that a "more stringent" limitation is applied to mental health

benefits without establishing how stringent of a limitation is applied to analogous medical/surgical benefits. Because Plaintiffs' complaint fails to allege facts about the effect of this purported limitation on the various medical/surgical benefits Plaintiffs identify, the allegations are insufficient to establish a disparity, to support a violation of Conn. Gen. Stat. § 38a-488c, or to plead a CUTPA claim based on such a violation. Thus, Plaintiffs' fourth cause of action under CUTPA must be dismissed.

**5.    Kuller Fails to State a Claim for Fraudulent or Negligent Misrepresentation.**

Plaintiffs' fifth and sixth claims for fraudulent and negligent misrepresentation must be dismissed both because Plaintiffs fail to plead fraud with particularity as required under Rule 9(b) and because Plaintiffs do not plead facts showing actual reliance by Kuller on any purportedly false statement by any Defendant.

"The four essential elements of fraud are (1) that a false representation of fact was made; (2) that the party making the representation knew it to be false; (3) that the representation was made to induce action by the other party; and (4) that the other party did so act to her detriment." *Pospisil v. Pospisil*, 59 Conn. App. 446, 450, 757 A.2d 655, 658 (2000). "[T]he party to whom the false representation was made [must claim] to have relied on that representation and to have suffered harm as a result of the reliance." *Simms v. Seaman*, 308 Conn. 523, 548, 69 A.3d 880, 894 (2013) (alterations in original). "The elements of a claim for negligent misrepresentation are: (1) that a misrepresentation of fact was made; (2) that the party making it knew or should have known that it was untrue; (3) that the other party reasonably relied upon it; and (4) that the latter suffered pecuniary harm as a result thereof." *Drena v. Bank of Am., N.A.*, No. 3:15-CV-176 (VAB), 2017 WL 6614094, at *14 (D. Conn. Dec. 27, 2017) (internal quotation marks omitted).

24

As discussed above, when fraud is alleged, the Court "must also view the complaint in light of Rule 9(b), which requires that 'the circumstances constituting fraud . . . be stated with particularity.'" *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127 (2d Cir. 1994) (quoting Fed. R. Civ. P. 9(b)). Rule 9(b) requires the plaintiff to identify (1) the specific statements the plaintiff contends where fraudulent, (2) the speaker of each statement, (3) the circumstances under which the statement was made, including where, when, and to whom, and (4) how and why the statements are fraudulent. *See Mills*, 12 F.3d at 1175; *Waldman*, 714 F. Supp. 2d at 402. Where a complaint names multiple defendants, Rule 9(b) does not permit allegations attributing fraudulent statements generally to all defendants. *See Mills*, 12 F.3d at 1175; *Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 509, 517 (W.D.N.Y. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" ).

Plaintiffs fail to meet Rule 9(b)'s pleading requirements with respect to their fraud claim because they do not allege with specificity the false representations and surrounding facts. All of Plaintiffs' fraud allegations, and the vast majority of their general factual allegations, attribute allegedly false statements generally to "Defendants," without specifying which of the three defendants purportedly made any given statement or representation. *See* Compl. ¶¶ 326–329, 338–340, 342; *see also, e.g., id.* ¶¶ 4, 9, 202, 205–07, 222–26, 249. Even where the purported speaker is identified, however, Plaintiffs fail to specify the actual false statements, see, e.g., *id.* ¶¶ 209, 266, to identify the circumstances of the purported statement, including when, how, and to whom it was made, see, e.g., *id.* ¶¶ 212, 215–17, or to explain why the statements were fraudulent, *see*,

*e.g., id*. ¶¶ 171–76, 201.   Those allegations fail to satisfy Rule 9(b)'s particularity requirements and thus fail to state a claim for fraudulent or negligent misrepresentation.

Plaintiffs also fail to plead facts establishing Kuller's reasonable reliance on any purported misrepresentation in taking any action.   The only "reliance" Plaintiffs allege was induced by Defendants' purported misrepresentations was Plaintiffs' enrollment in their Anthem plan. *See* Compl. ¶¶ 233–34, 332–33.   And Plaintiffs allege that "Plaintiffs and class members justifiably relied on Defendants' representations and omissions, as Defendants had unique knowledge of the facts underlying their representations."   Compl. ¶ 331; *see also id.* ¶¶ 229, 341.   But such allegations "are conclusory," because they "they do not explain how or why the plaintiffs relied on the allegedly false [statements]" where there is no allegation Kuller had actually seen them. *See Stuart v. Freiberg*, 316 Conn. 809, 828, 116 A.3d 1195, 1207 (2015).   Rather, "[w]ithout *actual* reliance, reasonable reliance cannot possibly exist."   *Id*. (emphasis in original).   And absent from Plaintiffs' Complaint are any allegations that Kuller actually saw or was aware of any of the allegedly false statements at the time she made her enrollment decision.

Absent such allegations establishing actual reliance—pleaded with the particularity required by Rule 9(b)—the Complaint cannot establish reasonable reliance and thus fails to state a claim for either fraudulent or negligent misrepresentation. *See id.; see also Sec. Inv. Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 72 (2d Cir. 2000) (reliance cannot be established where plaintiffs did not receive misrepresentation); *Hunte v. Abbott Lab'ys, Inc.*, 556 F. Supp. 3d 70, 88 (D. Conn. 2021) (dismissing negligent misrepresentation claim for lack of reliance where plaintiff "does not allege that she ever saw or read" the claimed misrepresentations).

26

Because Plaintiffs have neither pleaded their fraud claims with the required particularity, nor pleaded facts to show Kuller's reasonable reliance on the purported misrepresentations, Plaintiffs' fifth and sixth claims must be dismissed.

### 6.    Kuller Fails to State a Claim for Unjust Enrichment

Plaintiffs' final state-law claim for unjust enrichment must be dismissed as to Carelon and Elevance because Plaintiffs have not alleged nonconclusory facts establishing that either received a benefit, and must be dismissed as to Anthem because the cause of action improperly incorporates allegations of breach of contract that preclude an equitable remedy. "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573, 898 A.2d 178, 190 (2006).

As to Carelon and Elevance, the Complaint contains no non-conclusory allegation that Carelon or Elevance received any benefit from Kuller. The threshold showing of an unjust enrichment claim is that the defendant "benefited from the transaction or has received something of value" that it would be unjust for the defendant to retain. *Garwood & Sons Const. Co. v. Centos Assocs. Ltd. P'ship*, 8 Conn. App. 185, 187, 511 A.2d 377, 379 (1986). As discussed above, Carelon and Elevance are not in privity with Kuller, as her insurance contract is with Anthem, and neither Carelon nor Elevance is a party to that contract. *See* Compl. ¶¶ 22, 155. Kuller pays her insurance premiums to Anthem. *Id.* ¶ 251.

Plaintiffs instead allege that Kuller "conferred a benefit on Defendants by enrolling in Anthem's health insurance and thereby directing [her] medical premiums to Defendants." *Id.* ¶ 346. Plaintiffs' allegation that Kuller "directed" her premium payments to Defendants, however, does not establish that Carelon or Elevance itself *received* any portion of those premiums or any

other benefit from Kuller.  Plaintiffs' Complaint is devoid of any allegation explaining how payments she made to Anthem under her Anthem insurance contract resulted in a payment or benefit to Carelon or Elevance; such an allegation is conclusory as it relates to Carelon and Elevance absent facts showing how either of those entities in particular "benefited from the transaction."  *Garwood*, 8 Conn. App. at 187.  Without allegations establishing Carelon or Elevance in fact *received* some benefit as a result of Kuller's enrollment decision, Plaintiffs' unjust enrichment claim fails as it relates to Carelon and Elevance.

As to Anthem, Plaintiffs' unjust enrichment claim fails because, under Connecticut law, an unjust enrichment cause of action that incorporates allegations that an express contract exists, and was breached by the defendant, cannot survive a pleading challenge.  As a general rule, Connecticut courts permit parties to "plead alternative counts alleging breach of contract and unjust enrichment."  *Stein v. Horton*, 99 Conn. App. 477, 485, 914 A.2d 606, 613 (2007).  However, the "lack of a remedy under a contract is a precondition to recovery based on unjust enrichment."  *Piccolo v. Am. Auto Sales, LLC*, 195 Conn. App. 486, 499, 225 A.3d 961, 970 (2020).  Thus, alternative pleading of breach of contract and unjust enrichment claims is permitted only where the plaintiff does not "allege an express contract in his unjust enrichment counts," and does not "incorporate the breach of contract allegations . . . in the unjust enrichment counts." *Id*. at 501–02.  "Asserting both an express contract and claiming unjust enrichment [within the same count] is legally insufficient."  *Whitby Sch., Inc. v. Grenaille*, No. CV030195602, 2003 WL 23191957, at *2 (Conn. Super. Ct. Dec. 29, 2003) (alteration in original).  "Where a plaintiff incorporates allegations of an express contract in a count alleging unjust enrichment, the claim for unjust enrichment cannot lie." *Id*.

Here, Plaintiffs allege the existence of an express contract—and its breach—in paragraphs 279–83 of the Complaint.  As part of their seventh cause of action for unjust enrichment, Plaintiffs "incorporate by reference *all allegations* in this Complaint and restate them as if fully set forth herein." Compl. ¶ 344 (emphasis added).   Plaintiffs have thus incorporated allegations of an express contract between Kuller and Anthem and the breach of that contract in their claim for unjust enrichment, rendering it "legally insufficient" under Connecticut law as to Anthem.  *See Piccolo*, 195 Conn. App. at 499; *Whitby Sch.*, 2003 WL 23191957 at *2.  Plaintiffs' seventh cause of action for unjust enrichment accordingly fails to state a claim and must be dismissed.

## III.  PLAINTIFFS' CLAIMS UNDER ERISA MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Plaintiffs last four claims all arise under ERISA and thus are asserted on behalf of the Mazzolas and Amec as the beneficiaries and purchaser, respectively, of an ERISA-governed insurance plan, the Anthem Silver CT Pathway PPO plan. *See* Compl. ¶¶ 17, 19, 21.  Plaintiffs' attempt to assert these claims against Carelon and Elevance must fail because they are not parties to any agreement with the Mazzolas and Amec that could give rise to liability under ERISA. Moreover, as with their state-law claims, Plaintiffs' causes of action under ERISA each fail to state a claim and must be dismissed.

### A.    Plaintiffs Cannot Maintain ERISA Claims Against Carelon and Elevance

First, Plaintiffs cannot pursue claims against Carelon and Elevance under ERISA because the ERISA-governed plan upon which they base their claims is with Anthem, and neither Carelon nor Elevance is party to that insurance contract.  "ERISA plans are contracts, and courts use 'familiar rules of contract interpretation' when addressing an ERISA plan." *Est. of Kenyon v. L + M Healthcare Health Reimbursement Acct.*, 404 F. Supp. 3d 627, 632 (D. Conn. 2019) (quoting *Lifson v. INA Life Ins. Co. of N.Y.*, 333 F.3d 349, 353 (2d Cir. 2003)).  "[A] parent corporation and

its subsidiar[ies] are regarded as legally distinct entities and a contract under the corporate name of one is not treated as that of both*." Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Intern., Inc.*, 2 F.3d 24, 26 (2d Cir. 1993).  Accordingly, where a parent or subsidiary corporation is not a party to the ERISA plan, a plaintiff cannot pursue ERISA claims against such an entity absent a "factual basis" for those claims "other than their status as the parent" of the entity in privity under the ERISA plan.  *Lines v. Hartford Fin. Serves. Group, Inc.*, No. 3:21-CV-00029 (KAD), 2022 WL 408820, at *4 (D. Conn. Feb. 10, 2022).

Here, the only ERISA-governed plan Plaintiffs have identified is the Anthem Silver Pathway CT PPO plan, which Plaintiffs expressly allege Amec "contracted with Anthem to purchase and provide" to the Mazzolas.  Compl. ¶¶ 17, 18, 19, 21.  Plaintiffs do not allege Carelon or Elevance is a party to that insurance contract.  Accordingly, Plaintiffs lack privity with Carelon or Elevance under the insurance plan on which their ERISA claims are based, and Plaintiffs accordingly cannot pursue claims against Carelon or Elevance under ERISA, and Plaintiffs' eighth through eleventh causes of action must be dismissed as to Carelon and Elevance for this reason. *See Lines*, 2022 WL 408820, at *4.

### B.    Plaintiffs' Claim for Benefits Under ERISA Fails

Plaintiffs' eighth claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B) must be dismissed for failure to adequately plead exhaustion of administrative remedies.  To the extent exhaustion is adequately pleaded for any claims, Plaintiffs fail to plead facts establishing that Anthem's benefits determination was incorrect.  Plaintiffs' ERISA benefits claim accordingly must be dismissed.

### 1.    Plaintiffs Have Failed to Plead Exhaustion of Administrative Remedies

Although ERISA does not contain an exhaustion requirement, the Second Circuit "has recognized the firmly established federal policy favoring exhaustion of administrative remedies in

ERISA cases" and requires exhaustion of administrative appeals before a claimant may sue to recover benefits.  *See Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993); *see also Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105 (2013) ("The courts of appeals have uniformly required that participants exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B)").  "The failure to exhaust administrative remedies before filing an action in federal court requires [an] ERISA cause of action to be dismissed." *Cooper v. Int'l Bus. Machines Corp.*, No. 3:24-CV-656 (VAB), 2024 WL 5010488, at *7 (D. Conn. Dec. 6, 2024) (quoting *Neurological Surgery, P.C. v. Aetna Health, Inc.*, 511 F. Supp. 3d 267, 293 (E.D.N.Y. Jan. 4, 2021) (alteration in original).  And while failure to exhaust is an affirmative defense rather than a jurisdictional defect, "Courts within the Second Circuit 'routinely dismiss ERISA claims . . . on a 12(b)(6) motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies.'" *Neurological Surgery*, 511 F. Supp. 3d at 296.

Importantly, a bald assertion of exhaustion is insufficient to withstand a motion to dismiss. *See Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*, No. 3:20CV1675(JBA), 2022 WL 743088, at *8 (D. Conn. Mar. 11, 2022), *reconsideration granted on other grounds*, 2022 WL 10560321 (D. Conn. Oct. 18, 2022) (citing *Kesselman v. The Rawlings Co.*, 668 F. Supp. 2d 604, 608-09 (S.D.N.Y. 2009)).  Nor can exhaustion be alleged in gross.  *See Neurological Surgery*, 511 F. Supp. 3d at 294 (rejecting sufficiency of allegation that plaintiff "appealed each of the 200 claims at issue").  Rather, for each benefit denial sought to be challenged, the plaintiff must allege facts from which the Court can infer "what each ERISA plan's appeals procedure required, whether Plaintiff followed that procedure, when the appeal was taken, and when the appeal was decided," from which the Court can determine "that an appeal was timely taken," *id.*, and a final administrative decision reached.

Plaintiffs' allegations fail to adequately plead administrative exhaustion. Plaintiffs first improperly attempt to establish exhaustion on a blanket basis, by alleging in general that they "directly appealed Defendants' denials," Defendants issued adverse determinations or failed to respond, and Plaintiffs filed the instant action within the applicable limitations periods. Compl. ¶ 150. But it is "well established" that such "bald assertions that administrative remedies have been exhausted do not withstand a 12(b)(6) motion." *Neurological Surgery*, 511 F. Supp. 3d at 294. Accordingly, Plaintiffs' blanket assertion of exhaustion must be rejected.

Plaintiffs attempt to bolster their showing of exhaustion by offering a handful of claims for speech and occupational therapy which they contend demonstrate exhaustion. *See* Compl. ¶¶ 151-52. But while these six claims include more detail than Plaintiffs' blanket assertion of exhaustion, they are still insufficient for the Court to infer exhaustion was completed. While Plaintiffs allege a general timeframe during which the administrative appeals were submitted and decided, Plaintiffs have failed to allege facts demonstrating what their plan's appeal procedure actually requires. *See Neurological Surgery*, 511 F. Supp. 3d at 293. While Plaintiffs allege they appealed within 180 days of the benefit denial, Plaintiffs have not established that this is the timeframe required by the plan. Accordingly, the Complaint contains insufficient allegations to establish exhaustion for even these six claims, and the Court must dismiss Plaintiffs' ERISA benefits claim for lack of exhaustion. *See Cooper v. Int'l Bus. Machines Corp.*, 2024 WL 5010488, at *7.

## 2. Plaintiffs' ERISA Benefits Claim Fails on the Merits

Even if the Court were to conclude that Plaintiffs had adequately pleaded exhaustion as to the six claims for which they provided some detail as to the administrative review process, those claims should nevertheless be dismissed because Plaintiffs have failed to establish an entitlement to benefits under the plan's terms.

A claim for benefits under 29 U.S.C. § 1132(a)(1)(B), "in essence, is the assertion of a contractual right." *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002). Thus, to proceed on a claim under this section, a plaintiff must establish "benefits due [them] under the terms of [the] plan." *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (quoting 29 U.S.C. § 1132(a)(1)(B)). Thus, as with a breach of contract claim, for which the plaintiff must "allege the provisions of the contract upon which the claim is based," *Timmons*, 283 F. Supp. 2d at 718, an ERISA plaintiff "must allege . . . the provisions of the plan that entitle it to benefits." *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, No. 10-CV-04911-EJD, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011). Where, as here, the health plan gives Anthem "discretionary authority with respect to the administration of the plans and the payment of plan benefits," Compl. ¶ 362, the plaintiff must allege facts that, if true, show that benefit decision was: (1) without reason; (2) unsupported by substantial evidence; or (3) erroneous as a matter of law. *See O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir.1995).

Four of the claims for which Plaintiffs attempted to demonstrate exhaustion each involve denials of coverage on the basis that the requested benefits were not medically necessary, the remaining two were denied on the basis that the number of allowable sessions for such services had been exceeded. *See* Compl. ¶¶ 151–52. Thus, to plead a claim for benefits, Plaintiffs needed to identify the specific terms of their insurance plan that each of Anthem's denials breached and plead facts demonstrating that Anthem's determination was without reason, unsupported by evidence, or legally incorrect. *See O'Shea*, 55 F.3d at 112. Plaintiffs have failed to do so.

First, Plaintiffs do not plead the terms of the plan which define when care is medically necessary, nor do they identify the plan's terms governing the number of speech, occupational, or physical therapy sessions that may be approved for a particular condition or course of treatment.

33

Plaintiffs thus cannot establish an entitlement to benefits for these services, because they have not pleaded the provisions of their health insurance plan under which benefits are due. *Timmons*, 283 F. Supp. 2d at 718. That alone is fatal to Plaintiffs' ERISA benefits claim. Second, Plaintiffs simply do not allege facts showing that Anthem's determinations were unreasonable or legally erroneous. The Complaint is devoid of allegations establishing Baby Doe's clinical condition in January and February 2025 from which this Court could evaluate whether, if true, Anthem's medical necessity determination was reasonable. And the Complaint likewise does not contain allegations regarding the total number of speech, occupational, and physical therapy sessions Baby Doe had attended in April 2025 that would allow the Court to compare those allegations with the plan's benefits and limitations (had they been pleaded).

In short, even for the claims for which Plaintiffs attempted to demonstrate exhaustion of administrative remedies, Plaintiffs have failed to allege facts that would establish that Anthem's denial of benefits for those claims was unreasonable or incorrect. Plaintiffs accordingly have failed to allege "benefits due [them] under the terms of [the] plan," *Varity Corp.*, 516 U.S. at 515, and their eighth cause of action for benefits under ERISA must be dismissed.

## C.    Plaintiffs' Claim for Breach of Fiduciary Duty Under ERISA Must be Dismissed

Plaintiffs' claim for breach of fiduciary duty must be dismissed both because Plaintiffs' allegations fail to state a claim, and because the damages remedy Plaintiffs seek is unavailable under ERISA for breach of fiduciary duty.

At the outset, Plaintiffs identify 29 U.S.C. § 1104(a) as the basis for Defendants' liability for breach of fiduciary duty. Compl. ¶¶ 362, 363. But this provision of ERISA "does not impose liability on a fiduciary for a breach of its duties; it merely provides the general rule that a fiduciary is to discharge its duties with the care and diligence of 'a prudent [person] acting in a like capacity

. . . with like aims." *Hall v. United Techs., Corp.*, 872 F. Supp. 1094, 1097 (D. Conn. 1995) (alteration and omission in original). Plaintiffs accordingly cannot rely on Section 1104 to provide the basis of their claim against Defendants, and their fiduciary duty claim fails for this reason.

To the extent the Court interprets the claim as one asserting liability under 29 U.S.C. § 1109(a), which imposes liability on a fiduciary for breach of "the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter," Plaintiffs' claim nevertheless fails. First, as to Plaintiffs' attempt to assert this claim as one for "damages at law" pursuant to 29 U.S.C. § 1132(a)(1)(B), Compl. ¶ 361, claims for breach of fiduciary may not be brought under that subsection, and may only be brought under 29 U.S.C. § 1132(a)(2) or (a)(3). *See Hall*, 872 F. Supp. at 1097. The Complaint thus fails to state a claim under 29 U.S.C. § 1132(a)(1)(B).

Next, Plaintiffs alternatively assert this claim under 29 U.S.C. § 1132(a)(3). *See* Compl. ¶ 361. But to "state a claim under section 502(a)(3), one must seek a remedy that falls within the traditional forms of equitable relief, such as an injunction, restitution, or specific performance, not money damages." *Hall*, 872 F. Supp. at 1099. The only specific equitable relief Plaintiffs identify either in the body of the Complaint or their demand for relief are simply equitable labels on a claim for money damages: "compensatory damages, restitution, disgorgement, and any other relief permitted by law or equity." Compl. at 82. And the only injury Plaintiffs identify to be remedied through this cause of action are the "significant damages" to the beneficiaries that are alleged to have resulted. Compl. ¶ 366. Thus, the "entire focus" of the Complaint is "recovery of monetary damages," *Hall*, 872 F. Supp. at 1100, *i.e.*, the costs incurred by Plaintiffs due to their alleged inability to treat with in-network providers*, accord Buckley Dement, Inc. v. Travelers Plan Adm'rs of Illinois, Inc.*, 39 F.3d 784, 787 (7th Cir. 1994) (concluding that complaint seeking disgorgement

of "the costs of the [beneficiary's] baby's care" was, in substance, a claim for money damages "inconsistent with the relief contemplated by § [1132](a)(3)").

As in *Buckley*, when the Court examines the "substance of the remedy sought . . . rather than the label placed on that remedy," the allegations of Plaintiffs' Complaint seek a remedy of money damages.   39 F.3d at 788.   "Because section 502(a)(3) precludes the recovery of compensatory and punitive damages, the plaintiffs fail to state a claim upon which relief may be granted."  *Hall*, 872 F. Supp. at 1100.

### D.    Plaintiffs' Claim for False Statements & Representations under ERISA Must be Dismissed

Plaintiffs next assert a claim under 29 U.S.C. § 1149 of ERISA, which prohibits the making of false statements "in connection with a plan or other arrangement that is [a] multiple employer welfare arrangement." Compl. ¶¶ 368–69.  But that section, by its plain terms, applies only to plans that meet the definition of a multiple employer welfare arrangement under 29 U.S.C. § 1002(40)(A).  And a plan qualifies under that section only if it is "established or maintained for the purpose of offering or providing [employee welfare benefits] to the *employees of two or more employers*," with some exceptions not relevant here.  29 U.S.C. § 1002(40)(A) (emphasis added). Nothing in Plaintiffs' Complaint establishes that the Amec-sponsored plan of which the Mazzolas are beneficiaries offers or provides benefits to the employees of some employer other than Amec. And the only part of Plaintiffs' complaint that even references such plan is Paragraph 369, which is nothing but a nearly word-for-word recital of the basis for liability under the statute.  Compl. ¶ 369.  That conclusory, threadbare allegation is inadequate to plead a cause of action.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Because Plaintiffs have failed to plead any facts establishing that their health insurance plan is a multiple employer welfare arrangement, their cause of action for false statements related to such a plan fails to state a claim and must be dismissed.

### E.    Plaintiffs' Claim for Violation of MHPAEA Must be Dismissed.

Plaintiffs last contend that Defendants violated MHPAEA by "denying claims for coverage of mental health services as not medically necessary when the true reason for the denial of coverage was lack of available in-network providers of mental health services."  Compl. ¶ 374.  And Plaintiffs allege a disparity exists because Defendants do not do the same for medical surgical benefits, "because in-network providers for medical and surgical treatments were more widely available under Defendants' health insurance." *Id*.  Thus, in substance, Plaintiffs' MHPAEA claim—asserted on behalf of the Mazzolas—is indistinguishable from their claim that Defendants violated Conn. Gen. Stat. § 38a-488c and CUTPA by "maintaining an insufficient network of mental health providers"—asserted on behalf of Kuller. Compl. ¶ 314.  Plaintiffs' claim under MHPAEA must fail for the same reason as their CUTPA parity claim.

MHPAEA requires that if a group health plan provides both medical and surgical benefits as well as mental health or substance abuse disorder benefits, it must not apply any "treatment limitation to mental health or substance use disorder benefits . . . that is more restrictive than the predominant . . . treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification."  29 C.F.R. § 2590.712(c)(2)(i).  Non-quantitative treatment limitations—those that limit the scope or duration of benefits rather than numerical limits—are permissible if the "processes, strategies, evidentiary standards, or other factors" used to apply the limitations "are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors" used to apply the limitation to medical/surgical benefits in

the same treatment classification. 29 C.F.R. § 2590.712(c)(4)(i) (2014).[5] That is, the Parity Act requires parity in *process*, not *outcome*—"[d]isparate results alone do not mean that" a non-quantitative treatment limitation fails to "comply with [parity] requirements." Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 78 Fed. Reg. 68,254 (Nov. 13, 2013); *K.K. v. Premera Blue Cross*, No. C21-1611-JCC, 2023 WL 3948236, at *5 (W.D. Wash. June 12, 2023) ("All that the Parity Act requires is that the process in determining how best to treat behavioral versus medical disorders be based on a similar level of evidence and support." (citing 29 C.F.R. § 2590.712(c)(4)(iii) Ex. 4)), *aff'd* No. 23-35480, 2025 WL 415721 (9th Cir. Feb. 6, 2025).

Accordingly, the mere denial of benefits for mental health or substance use disorder treatment does not give rise to a claim under MHPAEA; instead, a plaintiff must allege:

> (1) the insurance plan is of the type covered by the Parity Act; (2) the insurance plan provides both medical benefits and mental-health benefits; (3) the plan has a treatment limitation—either quantitative or nonquantitative—for one of those benefits that is more restrictive for mental-health treatment than it is for medical treatment; and (4) the mental-health treatment is in the same classification as the medical treatment to which it is being compared.

*Gallagher v. Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 256 (S.D.N.Y. 2018). That is, a plaintiff must allege the "treatment limitations" the plan imposes on mental health/substance treatment and those on medical/surgical analogues and allege facts showing that

---

[5] Anthem is citing to the Parity Act regulations that were in effect during the dates of service at issue in this case. While the regulations have since been amended, the Department of Labor, Department of Health and Human Services, and the Department of Treasury have issued a notice of non-enforcement of the revised Parity Act regulations that came into effect in 2024. *See* Statement of U.S. Departments of Labor, Health and Human Services, and the Treasury regarding enforcement of the final rule on requirements related to the Mental Health Parity and Addiction Equity Act, U.S. Department of Labor, Employee Benefits Security Administration (May 15, 2025), available at https://www.dol.gov/agencies/ebsa/laws-and-regulations/laws/mental-health-parity/statement-regarding-enforcement-of-the-final-rule-on-requirements-related-to-mhpaea.

the mental-health limitation is more restrictive. *See id.; Michael M. v. Nexsen Pruet Grp. Med. & Dental Plan*, No. 3:18-cv-00873, 2021 WL 1026383 (D.S.C. Mar. 17, 2021) (comparing plan's requirements for analogous facility types). And in comparing the treatment limitation across benefits, a plaintiff must allege a plausible disparity in the process by which the limitation is applied to mental health benefits. *See Michael M.*, 2021 WL 1026383, at *12.

As with Kuller's claim under state law, Plaintiffs' allegations underpinning their MHPAEA theory improperly focus on the outcome—Anthem's alleged denial of benefits, or the number of providers offering specific treatment modalities—rather than whether the processes are comparable between mental health and medical surgical benefits. Thus, Plaintiffs' allegation that the Mazzolas or others more readily found in-network medical/surgical providers within a "reasonable distance" than providers for a specific mental health condition does not demonstrate any disparity in the "manner" or process by which Defendants apply any nonquantitative treatment limitation, but only a difference in outcome. That is insufficient to establish a violation of MHPAEA. *See K.K*, 2023 WL 3948236, at *5 (granting summary judgment to defendants where plaintiffs identified no evidence that defendants "employed differing processes, strategies, or evidentiary standards to develop" nonquantitative treatment limitations for mental health treatment as compared to skilled nursing).

But even if allegations regarding the comparative accessibility of mental health providers were, in general, capable of establishing a violation of MHPAEA, Plaintiffs allegations here are insufficient because they do not actually meaningfully compare accessibility across benefits. As Plaintiffs acknowledge, the Mazzolas limited their search for behavioral health and speech and occupational therapists to 10 or 20 miles from their home. *See* Compl. ¶¶ 71, 75, 79. While Plaintiffs allege the Mazzola was more readily able to identify providers for analogous

medical/surgical benefits, the allegations do not state what radius the Mazzolas searched in to identify medical/surgical providers, how many providers the search yielded, or how many providers the Mazzolas contacted for any given service to identify an acceptable provider. In short, establishing a disparity requires a comparison between mental health and medical/surgical benefits: Plaintiffs cannot establish that a "more stringent" limitation is applied to mental health benefits without establishing how stringent of a limitation is applied to analogous medical/surgical benefits. Because Plaintiffs' complaint fails to allege facts about the effect of this purported limitation on the various medical/surgical benefits Plaintiffs identify, the allegations are insufficient to establish a disparity or to support a violation of MHPAEA. Accordingly, Plaintiffs' eleventh cause of action for violation of MHPAEA fails to state a claim and must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint should be dismissed with prejudice.

Dated: November 10, 2025                    Respectfully Submitted,

By:    /s/ *Stefanie Cerrone*
Stefanie Cerrone
Matthew J. Aaronson (*pro hac vice* to be submitted)
TROUTMAN PEPPER LOCKE LLP
875 Third Avenue
New York, NY 10022
T: (212) 704-6000
matthew.aaronson@troutman.com

stefanie.cerrone@troutman.com

*Attorneys for Defendants Anthem Health Plans, Inc., Carelon Behavioral Health, Inc. and Elevance Health, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by CM/ECF to all counsel of record on this 10th day of November 2025.


*/s/ Stefanie Cerrone*
_____
Stefanie Cerrone